**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Asia TV USA Ltd., MSM Asia Ltd., Star India Private Ltd., Viacom18 Media Private Limited, ARY Digital USA LLC, and DISH Network L.L.C., | **CIVIL ACTION NO. 17-CV-** 1:17-cv-06977 |
| | **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| Dibia Networks Limited and Abdellah Hamead, | |
| Defendants. | |

Plaintiffs Asia TV USA Ltd., MSM Asia Ltd., Star India Private Ltd., Viacom18 Media Private Limited, ARY Digital USA LLC, and DISH Network L.L.C., by and through their undersigned attorneys, for their Complaint, allege as follows:

## NATURE OF THE ACTION

1.      This copyright and trademark infringement action arises out of a global pirate television service provided to customers through the "BTV" set-top box. For a one-time up-front payment, BTV customers in the United States receive unlicensed television channels and television programs from India, Pakistan, and other countries. Among the victims of this piracy are Plaintiffs Asia TV USA Ltd., MSM Asia Ltd., Star India Private Ltd., Viacom18 Media Private Limited, ARY Digital USA LLC (collectively, the "Network Plaintiffs"), and DISH Network L.L.C., which holds certain exclusive rights from the Network Plaintiffs to distribute programming in the United States.

2.      Plaintiffs are the legal and beneficial owners of exclusive rights to exploit the Network Plaintiffs' copyrighted television programming (the "Copyrighted Programs") in the

United States. Under United States copyright law, Plaintiffs have the exclusive rights to, among other things, reproduce, distribute, and publicly perform their Copyrighted Programs.

3.      Upon information and belief, Defendants Dibia Networks Limited ("Dibia") and Abdellah Hamead ("Hamead") acting in concert with a common purpose and scheme, have set up a pirate broadcasting network that, without permission and without compensation to Plaintiffs, brazenly captures entire channels of the Network Plaintiffs' television programming and streams that programming over the internet to United States users of the BTV device, twenty-four hours a day, seven days a week (the "BTV Retransmission Service").

4.      Defendants monetize the BTV Retransmission Service by selling the BTV device to the public, including United States consumers, for up to $299 per unit at retail. Each BTV device includes a software interface for BTV users to access and view infringing streams of the Network Plaintiffs' copyrighted television programming.

5.      The BTV Retransmission Service accomplishes this massive piracy by directly streaming the Networks Plaintiffs' Copyrighted Programs to BTV users in the United States from servers located in the United States and elsewhere.

6.      Upon information and belief, Defendants (1) capture the Network Plaintiffs' broadcasts; (2) reproduce digital copies of those broadcasts to store on United States servers; (3) distribute digital video copies of those broadcasts; and (4) retransmit these infringing copies of the Copyrighted Programs over the internet to BTV users in the United States. In these ways, Defendants directly infringe Plaintiffs' rights in the Copyrighted Programs by reproducing, distributing, and publicly performing those programs without consent.

7.      Additionally, Dibia (1) provides the infringing BTV Retransmission Service to all purchasers of the BTV device; (2) aggressively advertises and promotes the BTV device's

capacity to deliver the Network Plaintiffs' Copyrighted Programs to users of the BTV device without payment to Plaintiffs; (3) exercises control over the servers that facilitate the unauthorized streaming of Copyrighted Programs to BTV users; and (4) directly profits from the massive infringement made possible by the BTV device, while declining to take any meaningful steps to stop the rampant infringement taking place through Dibia's digital premises and facilities, despite receiving many cease-and-desist letters from Plaintiffs. Upon information and belief, Hamead personally directs, supervises, controls, and participates in each of these acts, and similarly directly profits from the massive infringement made possible by the BTV device.

8.      Dibia has built its business model around blatant copyright infringement, brazenly advertising and promoting the capability of the BTV device to provide users with infringing streams of the Copyrighted Programs, including publicizing lists of Plaintiffs' television channels available on the BTV device without Plaintiffs' authorization. In doing so, Dibia uses the Network Plaintiffs' unique channel logos and trademarks—including by building them into the BTV's device interface—to intentionally deceive consumers by giving the false impression that Defendants provide lawful broadcasts of the channels with the Network Plaintiffs' approval or are otherwise associated with the Network Plaintiffs.

9.      Defendant Hamead owns and controls Dibia. Upon information and belief, Defendant Hamead actively directs, participates in, and financially benefits from Dibia's infringement.

10.     The BTV Retransmission Service's unauthorized copying, distribution, and public performances of the Copyrighted Programs cause Plaintiffs irreparable harm in a number of ways, including (1) directly competing with authorized subscriptions for Plaintiffs' television packages, thereby causing lost market share and price erosion for legitimate services; (2)

disrupting Plaintiffs' relationships with authorized distribution partners in the United States; (3) depriving Plaintiffs of their exclusive rights to control the distribution, timing of distribution, and quality of the Copyrighted Programs; and (4) interfering with Plaintiffs' ability to further develop the lawful market for internet distribution of the Copyrighted Programs in the United States.

11.     As a result of Defendants' unlawful conduct, Plaintiffs are entitled to their damages and Defendants' profits from copyright infringement, trademark infringement and unfair competition, and unlawful deceptive acts and practices, as well as permanent injunctive relief barring Defendants from (1) reproducing, distributing, and/or publicly performing the Copyrighted Programs in the United States; (2) using in any manner the trademarks of the Network Plaintiffs or any variation thereof, or otherwise infringing those trademarks, or (3) inducing, encouraging, causing, facilitating, and/or materially contributing to the unauthorized reproduction, distribution, and/or public performance of the Copyrighted Programs in the United States by others.

## THE PARTIES

12.     Plaintiff Asia TV USA Ltd. ("Zee") is a corporation organized under the laws of the State of Wyoming, with its principal place of business located at 350 Fifth Avenue, Suite 7240, New York, NY 10118. Zee provides Hindi and other non-English language television channels, including Zee TV, Zee Cinema, Zee Bangla, Zee Action, Zee Classic, Zee News, Zee Anmol, Zee Telgu, & TV, & Pictures, Zee Zindagi, Living Foodz, Zing Asia, Zee Punjabi, ETC Bollywood, and Zee Salam (the "Zee Channels"). Zee owns copyrights in works that are broadcast on the Zee Channels, including the right to reproduce, distribute, and publicly perform

those works in the United States, including but not limited to the registered copyrighted works listed in Exhibit A hereto.

13.     Zee is licensed to use the unique channel logos and trademarks that are associated with and prominently displayed during each broadcast of the Zee Channels (the "Zee Marks"). The Zee Marks have been used continuously in commerce for several years in the broadcasting and advertisement of the Zee Channels, including in the United States, by Zee and its affiliates, including prior to Defendants' infringement discussed below.

14.     Plaintiff MSM Asia Ltd. ("MSM") is a corporation organized under the laws of the United Kingdom, with its principal place of business located at One Six Six, Third Floor, 166 College Road, Harrow, Middlesex, HA1 1BH, United Kingdom and its registered office located at 25 Golden Square, London, W1F 9LU, United Kingdom. MSM is a wholly owned indirect subsidiary of Sony Pictures Networks India Private Limited ("SPNI"), located at Interface Building 7, Off Malad Link Road, Malad West, Mumbai, 400064, India. SPNI has appointed MSM as its exclusive distributor of certain Hindi language television channels, including Sony SET, SET Max, Sony Mix, and SAB (collectively, the "MSM Channels") in the territories of, among others, the United States and Canada. SPNI owns copyrights in works that are broadcast on the MSM Channels, including the right to reproduce, distribute, and publicly perform those works in the United States, including but not limited to the registered copyrighted works listed in Exhibit A hereto.

15.     The affiliates of MSM own the unique channel logos and trademarks that are associated with and prominently displayed during the broadcast of the MSM Channels (collectively, the "MSM Marks"). MSM is authorized to use and include the MSM Marks on the MSM Channels. The MSM Marks have been used continuously in commerce for several years in

the broadcasting and advertisement of the MSM Channels, including in the United States, by MSM and its affiliates, including prior to Defendants' infringement discussed below.

16.     Plaintiff Star India Private Ltd. ("Star") is a corporation organized under the laws of India, with its principal place of business located at Star House, Urmi Estate, 95, Ganpatrao Kadam Marg, Lower Parcel, Mumbai 400013, India. Star provides Hindi language television channels, including Star India Plus, Life OK, Star Gold, Star Movies, Star World, Star Sports, Star Select, Star Utsav, Star Vijay, and Star Jalsha (collectively, the "Star Channels"). Star owns copyrights in works that are broadcast on the Star Channels, including the right to reproduce, distribute, and publicly perform those works in the United States, including but not limited to the registered copyrighted works listed in Exhibit A hereto.

17.     Star owns and/or is licensed to use the unique channel logos and trademarks that are associated with and prominently displayed during each broadcast of the Star Channels (collectively, the "Star Marks"). The Star Marks have been used continuously in commerce for several years in the broadcasting and advertisement of the Star Channels, including in the United States, by Star and its affiliates, including prior to Defendants' infringement discussed below.

18.     Plaintiff Viacom18 Media Private Limited ("Viacom18") is a company registered under the laws of India, with its principal place of business located at Zion Biz World, Subhash Road 'A', Vile Parle (East), Mumbai, 400057, Maharashtra, India. Viacom18 broadcasts various Indian language television channels, including Colors (in India), Colors UK (in the United Kingdom), Colors MENA (in the Middle East and North Africa), Aapka Colors (in the United States), Rishtey, and MTV India (collectively, the "Viacom18 Channels"). Viacom18 owns copyrights in works that are broadcast on the Viacom18 Channels, including the right to

reproduce, distribute, and publicly perform those works in the United States, including but not limited to the registered copyrighted works listed in Exhibit A hereto.

19.     Viacom18 owns the unique channel logos and trademarks that are associated with and prominently displayed during the broadcast of content on the Viacom18 Channels (collectively, the "Viacom18 Marks"). The Viacom18 Marks have been used continuously in commerce for several years in the broadcasting and advertisement of the Viacom18 Channels, including in the United States, by Viacom18 and its affiliates, including prior to Defendants' infringement discussed below.

20.     Plaintiff ARY Digital USA, LLC ("ARY") is a limited liability corporation organized under the laws of New York, with its principal place of business located at 76 North Broadway, Hicksville, New York, 11801. ARY broadcasts Urdu and English language television channels, including ARY QTV, ARY Digital, ARY Music, ARY Zauq, ARY Zindagi, and ARY News (collectively, the "ARY Channels"). ARY owns copyrights in works that are broadcast on the ARY Channels, including the right to reproduce, distribute, and publicly perform those works in the United States.

21.     ARY owns the unique channel logos and trademarks that are associated with and prominently displayed during each broadcast of the ARY Channels (the "ARY Marks"). The ARY Marks have been used continuously in commerce for several years in the broadcasting and advertisement of the ARY Channels, including in the United States, by ARY and its affiliates including prior to Defendants' infringement discussed below.

22.     Plaintiff DISH Network L.L.C. ("DISH") is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112. DISH is the fourth largest pay-television provider

in the United States, delivering copyrighted programming to millions of subscribers nationwide by means of satellite and over-the-top ("OTT") services, whereby programming is delivered using a public internet infrastructure. DISH's subscribers enjoy access to hundreds of video and audio channels, including a diverse line-up of international channels.

23.     DISH contracts for and purchases rights for most of the international channels distributed on its platform from networks and their agents, such as the Network Plaintiffs. Pursuant to written agreements, DISH has the right, and in many instances the exclusive right, to reproduce, distribute, and publicly perform in the United States the works that air on certain of the Network Plaintiffs' channels, by means including satellite, OTT, internet protocol television ("IPTV"), and the internet. DISH also has the rights, and in many instances the exclusive right, to use the logos and trademarks that correspond with these international channels in the course of distributing these channels in the United States. These written agreements were in effect at all relevant times and are currently in effect.

24.     Defendant Dibia is a company organized under the laws of Hong Kong with its principal place of business in Hong Kong. Dibia's current registered address is Unit 1109, 11/F., Kowloon Centre, 33 Ashley Road, Tsimshatsui, Kowloon, Hong Kong according to the Hong Kong Registry.

25.     Defendant Hamead is a natural person believed to be residing at 3-3-10-601 Mita, Minato-Ku, Tokoyo, Japan. According to the Hong Kong Registry, Hamead is the sole Director of Dibia.  Upon information and belief, Defendant Hamead is the sole principal of Dibia and personally directs, supervises, controls, participates in, and financially benefits from the unlawful conduct of Dibia. Upon information and belief, there is a unity of interest and ownership among and between Dibia and Hamead such that Dibia is the alter ego of Hamead.

26.     Defendants Dibia and Hamead promote and sell the BTV device on a website located at BTV.co (the "BTV.co Website").

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1338 because they arise under the Copyright Act, 17 U.S.C. §§ 101, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* and this Court's pendant jurisdiction.

28.     Personal jurisdiction over Defendants is proper because they have each purposefully directed their conduct towards, and have purposefully availed themselves of the privileges of conducting business activities within, the State of New York by, among other things, transmitting, selling and supplying, and offering to transmit, sell and supply, the BTV Retransmission Service and/or BTV devices to customers and/or business partners in the State of New York and the Southern District of New York, causing injury to Plaintiffs in this State and in this District.

29.     Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

A.     **Defendants Unlawful Conduct**

30.     Defendants manufacture the BTV device and offer it for sale and sell it to consumers (including in the United States, the State of New York, and the Southern District of New York) from the BTV.co Website. As of the date of filing this Complaint, Dibia, through the BTV.co Website offers and sells the BTV device for $299.

i.     BTV Video Streaming

31.     Upon information and belief, Dibia (1) captures television signals being transmitted by Network Plaintiffs and other broadcasters in India, Pakistan, and elsewhere; (2) converts those signals as needed into a digital format suitable for streaming over the internet; (3)

creates and disseminates digital copies of Network Plaintiffs' copyrighted television programming to store on United States servers; and (4) transmits the pirated video streams of the Network Plaintiffs' programming to BTV users in the United States, all for the unlawful purpose of engaging in unauthorized public performance and distribution of Plaintiffs' Copyrighted Programs.

32.     Plaintiffs have not authorized the Defendants to publicly perform, transmit, or retransmit the Network Plaintiffs' television channels or any of the Copyrighted Programs. Nor have Plaintiffs authorized the Defendants to make copies of the Copyrighted Programs. Defendants' retransmission of the Network Plaintiffs' broadcasts and programs in the United States violates Plaintiffs' exclusive public performance rights and constitutes direct copyright infringement. Defendants' reproduction and distribution of copies of the Network Plaintiffs' broadcasts and programs in the United States violates Plaintiffs' exclusive reproduction and distribution rights and constitutes direct copyright infringement.

ii.     The BTV Device

33.     Defendants monetize the BTV Retransmission Service by selling BTV devices to United States consumers and equipping the BTV device with the infringing BTV Retransmission Service.

34.     The BTV device is a set-top box that delivers streaming television programming to customers over the internet without the customers paying subscription fees to an authorized licensee such as a cable, satellite, or other television services provider. Instead, Defendants charge BTV users a one-time fee for access to the BTV Retransmission Service and the unlicensed content made available on the BTV Retransmission Service.

35.     The BTV device connects to a BTV user's internet connections, through a WiFi

signal or an Ethernet cable, to access digital content necessary for the BTV device to operate and transmit infringing streaming video. The BTV device connects to a BTV user's television set, through a video cable, to display its interface and unlicensed television programming.

36.     Once the BTV device is connected to a user's television set and internet connection, it is ready for use. No setup process is required.

37.     After a user turns on the BTV device, a main menu screen loads. The main menu screen contains icons marked "Live," "Recordings," and "VOD."

   iii.    The Live Section

38.     The "Live" section of the BTV device retransmits programming, including the Network Plaintiffs' Copyrighted Programs, over the internet to BTV users.

39.     When selected, the Live section automatically loads separate icons for each channel available for viewing on the BTV device, including icons for the Network Plaintiffs' channels.

40.     The following icons available through the Live section of the BTV device allow BTV users to select and stream the Network Plaintiffs' pirated television channels and Copyrighted Programs:

| Infringing BTV Channel and Icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | ARY Musik |

| Infringing BTV Channel and Icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | ARY News |
|  | ARY QTV |
|  | ARY Zindagi |
|  | Sony Max |

| Infringing BTV Channel and Icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | Sony |
|  | Sony SAB |
|  | Star Plus |
|  | Zee Cinema |

| Infringing BTV Channel and Icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | Zee TV |
|  | Zee TV HD |
|  | Zee Classic |
|  | Zee Punjabi |

41.    The BTV device also transmits the Viacom18 channel, Rishtey, which displays

the Rishtey logo when the channel is viewed. No separate channel icon is displayed for Rishtey

on the BTV device, although the channel is listed as available for viewing.

| Infringing BTV Channel | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | Rishtey |

42.     As shown above, the channel icons and channels themselves that are transmitted

on the BTV device make infringing use of the protected Zee Marks, MSM Marks, Star Marks,

Viacom18 Marks, and ARY Marks (collectively, the "Protected Marks").

43.     The BTV device Live section also allows users to view channels grouped by

language (e.g., Urdu and Hindi).

44.     The BTV device and its Live section have no purpose other than to deliver

infringing television programming to BTV users.

45.     The tables set forth in Paragraphs 40 and 41 above list only those TV channels

that stream the Network Plaintiffs' Copyrighted Programs. Upon information and belief, the Live

section is used by Defendants to unlawfully distribute and publicly perform without permission

the copyrighted television programming of numerous other copyright owners as well.

46.     Upon information and belief, the availability of infringing programming from the

Network Plaintiffs represents a significant draw and motivation for purchasers of the BTV

device and enables Defendants to sell more BTV devices at higher prices than they otherwise

could. Unbranded Android-based set-top boxes without such access to infringing programming

sell for as low as $20 at retail.

47.     Because Defendants do not pay licensing fees for Plaintiffs' Copyrighted

Programs, upon information and belief, all or most of the revenues Defendants receive from sales

of the BTV device are realized by Defendants as profits.

    iv.    <u>Defendants Aggressively Market the Infringing Capabilities of the BTV Device,
Showing Their Willful Copyright and Trademark Infringement</u>

48.     Defendants aggressively advertise and promote the BTV Retransmission Service

and the infringing capabilities of the BTV device. Defendants' marketing materials regularly tout

the ability of BTV users to stream copyrighted television programming.

49.     For example, upon information and belief, Defendants Dibia and Hamead

promote the BTV device on the BTV.co Website, as follows:

> BTV™ brings you HDTV quality content LIVE from the web,
> straight to your living room Television set. We are proud to offer
> all of this with absolutely NO monthly bills OR subscription fees.
> All you need is an internet connection of 1.5 MBPS or higher. It's
> truly that simple!
>
> Whether you like soap operas, reality tv shows, dramas, or stage
> comedies, with BTV™ you can sit back, relax, laugh, cry, or all of
> the above as we bring to life all of the popular TV Dramas from
> India and Pakistan in Urdu, Hindi, Punjabi, Telugu, Bengali and
> many other languages. Enjoy the magic of controlled entertainment
> with VOD and pause, rewind, or forward or pause the show
> whenever you want.

50.     The BTV.co Website also advertises and promotes the availability of infringing

television programming on the BTV device, as in the following exemplary screenshots showing

images from the Network Plaintiffs' programs available for streaming on the BTV device:



51.     From the BTV.co Website, customers are directed to buy the BTV device "now." Customers that click on the "Buy Now" icon are directed to purchase the BTV device directly from the BTV.co Website.





52.    The BTV device is also promoted on other websites, including one website

located at BTVBox.com (the "BTVBox.com Website"), which upon information and belief is

operated by one of Dibia's distributors and states:

### BTV BOX IS THE TOP CHOICE FOR FREE INTERNATIONAL TV

**All channels are free with no monthly or yearly fees. There is no installation, just plug and play.** BTV Box is an internet TV receiver that you plug into your TV to receive international channels as well as tv shows and movies on demand, all for free.

53.    The BTVBox.com Website also advertises and promotes the availability of

infringing television programming on the BTV device, as in the following exemplary screenshot

listing the channels of the Network Plaintiffs available for streaming on the BTV device:



54.   Upon information and belief, Defendants also operate a Facebook page at https://www.facebook.com/Btv-Box-173483802696603/ (the "BTV Facebook Page"). Via the BTV Facebook Page, Defendants advertise and promote the availability of infringing television programming on the BTV device.

55.   Prior to filing this lawsuit, Plaintiffs, through their agents, sent more than 120 cease-and-desist letters to the contact information listed on the BTV.co website, demanding that

Defendants stop infringing and contributing to the infringement of Plaintiffs' rights in Plaintiffs' Copyrighted Programs. The cease-and-desist letters identified infringing channels and provided a representative list of the Network Plaintiffs' programs, streamed without authorization through the BTV device. Defendants did not respond to Plaintiffs or their agents. Rather, despite receipt of these notices, Defendants continue to deliberately operate the BTV Retransmission Service, unlawfully provide the Network Plaintiffs' Copyrighted Programs through the Live section of the BTV device, and market, advertise, and promote the infringing capabilities of the BTV device, with full knowledge of the infringing nature of their activities.

**B.  Defendants Have Significant Contacts with the Forum**

56.     Defendants have purposefully directed their infringing conduct alleged above towards, and have purposefully availed themselves of the privileges of conducting business activities within, the United States, the State of New York, and the Southern District of New York.

57.     Defendants conduct business throughout the United States, including within the Southern District of New York, through the operation of the fully interactive and commercial BTV.co Website. Defendants advertise, promote, offer for sale, and sell BTV devices to customers within the State of New York and the Southern District of New York through the fully interactive commercial BTV.co Website. Defendants have purposefully directed their illegal activities towards consumers in New York through such advertisement, promotion, offering for sale, and sale of BTV devices into the State of New York and the Southern District of New York, causing harm to Plaintiffs in this State and this District.

58.     Defendants have specifically represented to Plaintiffs' investigator that Defendants sell BTV devices in New York City.

59.     BTV device user posts on the BTV Facebook Page and a message board devoted to technical support for the BTV device show that BTV devices are sold in New York and that BTV users are located in New York, NY.

60.     On October 6, 2016, Plaintiffs' investigator purchased a BTV device from the BTVBox.com Website, which upon information and belief the BTV device was provided by Dibia and shipped through one of Dibia's distributors to New York.

61.     In May 2017, Plaintiffs' investigator again purchased a BTV device from Dibia via the BTV.co Website, which upon information and belief the BTV device was shipped by Dibia to New York.

62.     Upon information and belief, many other customers in the State of New York and the Southern District of New York have purchased substantial numbers of BTV devices from Dibia through the fully interactive and commercial BTV.co Website.

63.     As alleged in more detail above, Defendants stream the Network Plaintiffs' Copyrighted Programs into the State of New York and the Southern District of New York when BTV customers located in this State and this District use the BTV device to watch the Copyrighted Programs over the internet.

64.     Upon information and belief, Defendants use multiple internet servers in the United States to deliver streaming content to BTV devices in the United States and to otherwise facilitate the operation of BTV devices and the delivery of content to those devices in the United States.

## FIRST CAUSE OF ACTION
## DIRECT COPYRIGHT INFRINGEMENT

65.     Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 64 above.

66.     Plaintiffs are the legal and/or beneficial owners of exclusive rights in the United States to reproduce, distribute, and publicly perform the Network Plaintiffs' Copyrighted Programs.

67.     The Copyrighted Programs are original audiovisual works that have been fixed in a tangible medium of expression and constitute copyrightable subject matter within the meaning of 17 U.S.C. § 102.

68.     Plaintiffs' copyrights in these programs originally arose under the laws of foreign nations that are parties to copyright treaties with the United States, including India and Pakistan, where the programs were authored and/or first published. Because the programs are non-United States works, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works. 17 U.S.C. §§ 101 & 411. Plaintiffs have nonetheless registered the Copyrighted Programs identified in Exhibit A.

69.     Under 17 U.S.C. § 106, Plaintiffs own the exclusive rights to reproduce the Copyrighted Programs, to distribute copies of the Copyright Programs to the public, and to publicly perform the Copyrighted Programs.

70.     By the actions alleged above, the Defendants have directly infringed and, unless enjoined, will continue to directly infringe Plaintiffs' copyrights and exclusive rights in the registered Copyrighted Programs identified in Exhibit A and all other Copyrighted Programs by unlawfully reproducing, distributing, and publicly performing the Copyrighted Programs in the United States, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106.

71.     The foregoing acts were and are conducted by the Defendants without Plaintiffs' authorization or consent and are not otherwise permissible under the Copyright Act.

72.     The Defendants committed the foregoing acts willfully, maliciously, intentionally, purposefully, and with full knowledge of, conscious disregard of, and indifference to Plaintiffs' exclusive rights in and to the Copyrighted Programs.

73.     With respect to registered Copyrighted Programs, Plaintiffs are entitled to seek up to $150,000 in statutory damages per work willfully infringed, or, alternatively, Plaintiffs' actual damages and Defendants' profits attributable to the infringement , in accordance with 17 U.S.C. §§ 412 and 504.

74.     With respect to Plaintiffs' unregistered Copyrighted Programs, Plaintiffs are entitled to recover Defendants' profits attributable to the infringement and Plaintiffs' actual damages therefrom pursuant to 17 U.S.C. § 504.

75.     Plaintiffs are also entitled to recover from the Defendants costs and attorneys' fees pursuant to 17 U.S.C. § 505.

76.     The foregoing acts of infringement by Defendants are causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of the Copyrighted Programs and their exclusive rights under the Copyright Act by Defendants.

## SECOND CAUSE OF ACTION
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

77.     Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 76 above.

78.     The Protected Marks are used by Plaintiffs in commerce in the United States and are entitled to full protection under the Lanham Act.

79.     By using the Protected Marks in connection with the viewing interface of the BTV device and in connection with the advertising, promotion, and sale of the BTV device and the BTV Retransmission Service, Defendants have caused and are likely to cause confusion in the minds of consumers and to create a false impression in the minds of consumers that Plaintiffs are affiliated, connected, or associated with Defendants' products and/or services, and/or that Plaintiffs sponsor or approve of such products and/or services, in violation of 15 U.S.C. § 1125(a).

80.     The Defendants committed the foregoing acts willfully, maliciously, intentionally, purposefully, and with full knowledge of, conscious disregard of, and indifference to Plaintiffs' rights in the Protected Marks.

81.     For their willful and deliberate violations of 15 U.S.C. § 1125(a), Defendants are liable to Plaintiffs for their profits from infringement and damages resulting from that infringement, as well as additional penalties and costs, pursuant to 15 U.S.C. § 1117.

82.     Plaintiffs are also entitled to injunctive relief pursuant to 15 U.S.C. § 1116 to enjoin and restrain Defendants from further violation of 15 U.S.C. § 1125(a).

## THIRD CAUSE OF ACTION
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

83.     Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 82 above.

84.     Plaintiffs have established through prior use in commerce in the United States a valid and protectable interest in the Protected Marks and have built and created valuable goodwill in those Marks.

85.     With full knowledge of the Protected Marks, Defendants have subsequently and without authorization of any kind from Plaintiffs, used the same and/or similar trademarks in

connection with the viewing interface of the BTV device and in connection with the advertising, promotion, and sale of the BTV device and the BTV Retransmission Service.

86.     Plaintiffs' unauthorized use of the Protected Marks permits Defendants to pass off the BTV Device and BTV Retransmission Service to the general public to the detriment of Plaintiffs and the unjust enrichment of Defendants.

87.     With full knowledge of the Protected Marks, Defendants have traded and continue to trade on the goodwill associated with those Protected Marks and to cause confusion or mistake or to deceive consumers and therefore infringe Plaintiffs' rights in the Protected Marks in violation of the common law.

88.     Defendants' conduct, as alleged here, constitutes trademark infringement and unfair competition under New York state common law. Defendants' actions have caused and are likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' products and/or services by Plaintiffs.

89.     The Defendants committed the foregoing acts willfully, maliciously, intentionally, purposefully, and with full knowledge of, conscious disregard of, and indifference to Plaintiffs' rights in the Protected Marks.

90.     Defendants' acts entitle Plaintiffs to general and special damages as well as all of Defendants' profits arising from their unlawful conduct, to the full extent provided for by the common law of the State of New York.

91.     Plaintiffs have no adequate remedy at law and as such are entitled to an injunction restraining Defendants and their agents, employees, officers, alter egos, and all persons acting in

concert with them, from engaging in any further such acts in violation of the common law of the State of New York.

## FOURTH CAUSE OF ACTION
## UNLAWFUL DECEPTIVE ACTS AND PRACTICES
## IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

92.     Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 91 above.

93.     Defendants, without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs' well-known and prior rights in the Protected Marks, have used the Protected Marks in connection with the viewing interface of the BTV device and in connection with the advertising, promotion, and sale of the BTV device and the BTV Retransmission Service to the consuming public in direct competition with Plaintiffs' services and in violation of New York General Business Law § 349.

94.     Defendants' use of the Protected Marks is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the BTV device and the BTV Retransmission Service, and is likely to deceive the public into believing that Plaintiffs are affiliated, connected, or associated with Defendants' products and/or services, and/or that Plaintiffs sponsor or approve of such products and/or services.

95.     Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

96.     The Defendants committed the foregoing acts willfully, maliciously, intentionally, purposefully, and with full knowledge of, conscious disregard of, and indifference to Plaintiffs' rights in the Protected Marks.

97.     As a result of Defendants' activities, Plaintiffs have been damaged in an amount to be proven at trial, which is not currently ascertainable.

98.     As a direct and proximate result of Defendants' acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to violate New York General Business Law § 349. Plaintiffs are entitled to permanent injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court grant judgment in favor of Plaintiffs and against Defendants as follows:

a.     Permanently enjoining Defendants and their officers, agents, servants, and employees and all those in active concert or participation with them, from (i) reproducing, distributing, publicly performing, and/or in any way transmitting the Network Plaintiffs' television programming, including the Copyrighted Programs; (ii) inducing, encouraging, causing, facilitating, and/or materially contributing to the unauthorized reproduction, distribution, public performance, and/or transmission of the Network Plaintiffs television programming, including the Copyrighted Programs by others; (iii) distributing, selling, advertising, marketing, or promoting any BTV Device that contains, connects to, offers for download, transmits, assists in the transmission of, streams, hosts, provides access to, or otherwise distributes or publicly performs, directly or indirectly, by means of any device or process, the Network Plaintiffs television programming, including the Copyrighted Programs, without permission; and (iv) using in any manner the Protected Marks of the Network Plaintiffs or any variation thereof, or otherwise infringing these trademarks.

b.       Awarding Plaintiffs statutory damages for Defendants' infringement of registered Copyrighted Programs or, in the alternative, Defendants' profits attributable to the infringement and Plaintiffs' actual damages therefrom pursuant to 17 U.S.C. §§ 412 and 504.

c.       Awarding Plaintiffs Defendants' profits attributable to infringement of unregistered Copyrighted Programs and Plaintiffs' actual damages therefrom pursuant to 17 U.S.C. § 504.

d.       Awarding Plaintiffs Defendants' profits and damages resulting from Defendants' violation of 15 U.S.C. § 1125(a), as well as additional penalties and costs for Defendants' willful and deliberate violations pursuant to 15 U.S.C. § 1117.

e.       Awarding Plaintiffs general and special damages for all of Defendants' profits derived from their past unlawful conduct to the full extent provided for by the common law of the State of New York.

f.       Awarding Plaintiffs damages for Defendants' violations of New York General Business Law § 349.

g.       Awarding Plaintiffs their costs of prosecuting this action, including reasonable attorneys' fees;

h.       Awarding Plaintiffs prejudgment and postjudgment interest at the highest legal rate allowed under law;

i.       Directing Defendants to file with this Court within 30 days after the entry of final judgment a written statement, under oath, setting forth in detail the manner in which they have complied with the Judgment of the Court; and

j.       Awarding Plaintiffs such other and further relief as this Court deems just, proper, and equitable.

Dated: September 13, 2017

Respectfully submitted,

By:  _/s/ Robert D. Balin_

DAVIS WRIGHT TREMAINE LLP
Robert D. Balin
(RobBalin@dwt.com)
Lacy H. Koonce, III
(LanceKoonce@dwt.com)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

*Attorneys for Plaintiffs Asia TV USA Ltd.,
MSM Asia Ltd., Star India Private Ltd.,
Viacom18 Media Private Limited, ARY Digital
USA LLC, and DISH Network L.L.C.*

# EXHIBIT A

| Network Plaintiff | Title | No. of Episode | Copyright Registration |
|---|---|---|---|
| Zee | Aur Pyar Ho Gaya | 213 | PA 1-959-953 |
| | Do Dil Bandhe Ek Dori Se | 223 | PA 1-959-954 |
| | Ek Tha Raja Ek Thi Rani | 85 | PA 2-018-576 |
| | Ek Tha Raja Ek Thi Rani | 85 | PA0002018576 |
| | Fear Files | 173 | PA 2-019-690 |
| | I Can Do That | 10 | PA 2-018-573 |
| | Jamai Raja | 335 | PA 2-015-340 |
| | Janbaaz Sindbaad | 4 | PA 2-019-777 |
| | Jodha Akbar | 257 | PA 1-959-957 |
| | Kaala Teeka | 14 | PA 2-018-574 |
| | Kumkum Bhagya | 421 | PA 2-015-342 |
| | Kumkum Bhagya | 69 | PA 2-019-787 |
| | Lajwanti | 39 | PA 2-019-577 |
| | Meri Sasu Maa | 1 | PA 2-019-775 |
| | Neeli Chatari Wale | 120 | PA 2-018-575 |
| | Neeli Chatari Wale | 128 | PA 2-019-800 |
| | Pavitra Rishta | 1326 | PA 1-959-956 |
| | Qubool Hai | 801 | PA 2-015-300 |
| | Sapne Suhane Ladakpan Ke | 537 | PA 1-959-955 |
| | Sarojini…Ek Nayal Pehal | 106 | PA 2-015-337 |
| | Satrangee Sasuraal | 265 | PA 2-015-336 |
| | Tashan-E-Ishq | 75 | PA 2-015-339 |
| | Yeh Vaada Raha | 44 | PA 2-018-578 |
| | Adaalat | 355 | PA0001924517 |
| | Adaalat | 365 | PA0001925930 |
| | Adaalat | 383 | PA0001939426 |
| | Adaalat | 387 | PA0001938892 |
| | Adaalat | 330 | PA 1-910-188 |
| | Bade Ache Lagte Hain | 618 | PA 1-910-187 |
| | Badi Door Se Aaye Hai | 65 | PA0001924518 |
| | Badi Door Se Aaye Hai | 85 | PA0001925917 |
| | Badi Door Se Aaye Hai | 136 | PA0001939419 |
| | Badi Door Se Aaye Hai | 150 | PA0001938921 |
| | Bharat Ka Veer Putra: Maharana Pratap | 208 | PA 1-910-180 |
| | Bharat Ka Veer Putra: Maharana Pratap | 271 | PA0001924515 |
| | Bharat Ka Veer Putra: Mahrana Pratap | 346 | PA0001938917 |
| | Bharat Ka Veer Putra: Mahrana Pratap | 292 | PA0001925929 |
| | Bharat Ka Veer Putra: Mahrana Pratap | 333 | PA0001939423 |

# EXHIBIT A

| | | | |
|---|---|---|---|
| | Bharat Ka Veer Putra: Maharana Pratap | 506 | PA0001990966 |
| | Bharat Ka Veer Putra: Maharana Pratap | 527 | PA0001983558 |
| | Bharat Ka Veer Putra: Maharana Pratap | 377 | PA0001948160 |
| | Bharat Ka Veer Putra: Maharana Pratap | 373 | PA0001944733 |
| | Bharat Ka Veer Putra: Maharana Pratap | 313 | PA0001932480 |
| | Bharat Ka Veer Putra: Maharana Pratap | 256 | PA0001923658 |
| | Chandrakant Chiplunkar Seedi Bambawala | 34 | PA0001925915 |
| | Chandrakant Chiplunkar Seedi Bambawala | 83 | PA0001939421 |
| | Chidya Ghar | 814 | PA0001938922 |
| | Chidya Ghar | 655 | PA 1-910-193 |
| | Chidya Ghar | 728 | PA0001927520 |
| | Chidya Ghar | 749 | PA0001925916 |
| **MSM** | Chidya Ghar | 800 | PA0001939420 |
| | CID | 1081 | PA 1-910-185 |
| | CID | 1139 | PA0001925914 |
| | CID | 1131 | PA0001924516 |
| | CID | 1169 | PA0001939427 |
| | CID | 1176 | PA0001938925 |
| | Crime Patrol | 415 | PA0001924837 |
| | Crime Patrol | 425 | PA0001932347 |
| | Crime Patrol | 449 | PA0001939428 |
| | Crime Patrol | 456 | PA0001938924 |
| | Ek Nayee Pehchaan | 102 | PA 1-910-181 |
| | Ek Nayee Pehchaan | 167 | PA0001924845 |
| | Hum Hai Na | 25 | PA0001925931 |
| | Hum Hai Na | 12 | PA0001924520 |
| | Hum Hai Na | 71 | PA0001939422 |
| | Hum Hai Na | 89 | PA0001938918 |
| | Humsafars | 12 | PA0001925913 |
| | Humsafars | 56 | PA0001939429 |
| | Humsafars | 73 | PA0001938923 |
| | Lapataganj | 245 | PA 1-910-196 |
| | Main Na Bhoolungi | 102 | PA 1-910-183 |
| | Main Na Bhoolungi | 152 | PA0001918990 |
| | Preetam Payaare Aur Wohh | 63 | PA 1-910-191 |
| | Taraak Mehta Ka Ooltah Chasmah | 1498 | PA0001924843 |
| | Taraak Mehta Ka Ooltah Chasmah | 1554 | PA0001939417 |
| | Taraak Mehta Ka Ooltah Chasmah | 1578 | PA0001938920 |
| | Taraak Mehta Ka Ooltah Chasmah | 1416 | PA 1-910-199 |

# EXHIBIT A

| | | | |
|---|---|---|---|
| | Taraak Mehta Ka Ooltah Chasmah | 1511 | PA0001925918 |
| | Taraak Mehta Ka Ooltah Chasmah | 174 | PA0001962473 |
| | Yam Hai Hum | 17 | PA0001938893 |
| | Yam Hai Hum | 101 | PA0001945710 |
| | Yam Hai Hum | 121 | PA0001965560 |
| | Yam Hai Hum | 182 | PA0001981557 |
| | Yam Hai Hum | 190 | PA0001991003 |
| | Yam Hai Hum | 210 | PA0001990971 |
| | Yam Hai Hum | 250 | PA0001982383 |
| | Yam Hai Hum | 52 | PA0001944723 |
| | Yam Hai Hum | 56 | PA0001948150 |
| | Yam Hai Hum | 98 | PA0001949666 |
| | Yam Hai Hum | 233 | PA0001983591 |
| **Star** | Dare 2 Dance | 6 | PA 1-928-702 |
| | Devon Ke Dev…Mahadev | 681 | PA 1-933-248 |
| | Devon Ke Dev…Mahadev | 699 | PA 1-927-287 |
| | Devon Ke Dev…Mahadev | 700 | PA 1-927-705 |
| | Diya Aur Baati Hum | 738 | PA 1-908-654 |
| | Diya Aur Baati Hum | 1118 | PA 2-015-323 |
| | Diya Aur Baati Hum | 1117 | PA 2-015-324 |
| | Ek Hasina Thi | 65 | PA 1-927-286 |
| | Ek Hasina Thi | 66 | PA 1-927-673 |
| | Ek Nayi Ummeed - Roshni | 20 | PA 2-015-305 |
| | Ek Nayi Ummeed - Roshni | 19 | PA 2-015-321 |
| | India's RAW Star | 4 | PA 1-928-701 |
| | India's RAW Star | 3 | PA 1-928-700 |
| | Laut Aao Trisha | 45 | PA 1-928-703 |
| | Mahabharat | 193 | PA 1-909-534 |
| | Mahabharat | 224 | PA 1-927-291 |
| | Mahabharat | 225 | PA 1-927-682 |
| | Saraswatichandra | 444 | PA 1-928-709 |
| | Savdhaan - India Fights Back 2 | 706 | PA 1-908-679 |
| | Tumhari Paakhi | 163 | PA 1-927-685 |
| | Tumhari Paakhi | 164 | PA 1-927-674 |
| | Ye Hai Mohabbatein | 168 | PA 1-927-672 |
| | Ye Hai Mohabbatein | 169 | PA 1-927-289 |
| | Ashoka (Chakravartin Ashoka Samrat) | 5 | PA1-963-910 |
| | Balik Vadhu  - Kacchi Umar Ke Pakke Rishte | 1813 | PA 1-963-815 |
| | Balika Vadhu - Kacchi Umar | 1724 | PA 1-942-504 |
| | Balika Vadhu - Kacchi Umar | 1751 | PA 1-942-424 |
| | Balika Vadhu - Kacchi Umar Ke Pakke Rishte | 1642 | PA 1-928-019 |
| | Balika Vadhu - Kacchi Umar Ke Pakke Rishte | 1678 | PA 1-936-717 |

3

# EXHIBIT A

| | | | |
|---|---|---|---|
| **Viacom18** | Balika Vadhu - Kacchi Umar Ke Pakke Rishte | 1774 | PA 2-019-346 |
| | Beintehaa | 148 | PA 1-928-023 |
| | Beintehaa | 178 | PA 1-936-702 |
| | Bigg Boss 8 | 26 | PA  1-42-411 |
| | Bigg Boss 8 | 49 | PA 1-942-513 |
| | Bigg Boss 8 | 68 | PA 1-990-978 |
| | Bigg Boss 8  Weekend ka vaar | 17 | PA 1-942-423 |
| | Bigg Boss 8 Weekend ka vaar | 10 | PA 1-942-503 |
| | Code Red | 12 | PA 1-963-656 |
| | Comedy Nights with Kapil | 109 | PA 1-936-721 |
| | Comedy Nights with Kapil | 122 | PA 1-942-425 |
| | Comedy Nights with Kapil | 96 | PA 1-936-683 |
| | Farah Ki Dawaat | 6 | PA 1-963-206 |
| | Jhalak Dikhlaa Jaa | 27 | PA 1-928-696 |
| | Jhalak Dikhlaa Jaa | 14 pt. 1 | PA 1-928-540 |
| | Jhalak Dikhlaa Jaa | 14 pt 2 | PA 1-928-704 |
| | Khatron Ke Khailadi | 2 | PA 1-963-655 |
| | Meri Aashiqui Tum se Hi | 90 | PA  1-942-511 |
| | Meri Aashiqui Tum se Hi | 22 | PA 1-928-011 |
| | Meri Aashiqui Tum se Hi | 52 | PA 1-936-718 |
| | Rangrasiya | 148 | PA 1-928-033 |
| | Sasural Simar Ka | 292 | PA 1-928-025 |
| | Sasural Simar Ka | 965 | PA 1-936-678 |
| | Shastri Sisters | 3 | PA 1-928-031 |
| | Shastri Sisters | 112 | PA 1-942-514 |
| | Shastri Sisters | 135 | PA 2-019-348 |
| | Shastri Sisters | 39 | PA 1-936-684 |
| | Shastri Sisters | 85 | PA 1-942-507 |
| | Swaragini | 19 | PA 1-963-208 |
| | The Anupam Kher Show | 3 | PA 1-936-681 |
| | The Anupam Kher Show | 9 | PA 1-936-679 |
| | Udaan | 111 | PA 1-990-977 |
| | Udaan | 15 | PA 1-936-682 |
| | Udaan | 61 | PA 1-942-512 |
| | Udaan | 88 | PA 1-942-508 |
| | Uttaran | 1457 | PA 1-936-680 |
| | Uttaran | 1428 | PA 1-928-029 |