**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ASIA TV USA LTD., MSM ASIA LTD., STAR INDIA PRIVATE LTD., VIACOM18 MEDIA PRIVATE LIMITED, ARY DIGITAL USA LLC, and DISH NETWORK L.L.C.,

                Plaintiffs,

    v.

DIBIA NETWORKS LIMITED and ABDELLAH HAMEAD,

                Defendants.

**NO. 17-CV-06977 (GBD)**

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS**

Robert D. Balin
Lacy H. Koonce, III
L. Danielle Toaltoan
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
New York, New York 10020
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................ 2

    A.   Plaintiffs' Businesses and Television Programming ............................2

    B.   Defendants' BTV Device and Pirate Retransmission Service ................3

    C.   Defendants' Default ..............................................................................6

III. ARGUMENT .................................................................................................. 7

    A.   Jurisdiction ...........................................................................................7

    B.   Standard for Default Judgment .............................................................7

    C.   Defendants Are Liable for Copyright Infringement ..............................8

    D.   Defendants' Copyright Infringement Entitles Plaintiffs to Statutory
        Damages ................................................................................................9

        1.   Defendants' Willfulness..........................................................12

        2.   Deterrent Effect on Defendants and Other Infringers..............13

        3.   Defendants Failed to Provide Records.....................................13

        4.   Value of the Copyrights ..........................................................14

        5.   Profits Reaped by Defendants..................................................14

    E.   Damages Sought in This Case .............................................................15

    F.   Plaintiffs Are Entitled to a Permanent Injunction...............................16

        1.   Plaintiffs Have Suffered Irreparable Injury .............................17

        2.   The Balance of Hardships and Public Interest Favor an Injunction .........18

        3.   This Court Has Authority to Order Third-Party Injunctive Relief ...........18

    G.   Plaintiffs Are Entitled to Post-Judgment Discovery............................20

IV.  CONCLUSION.............................................................................................. 21

4852-1407-9337v.13 0090227-000009

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Agence France Presse v. Morel*,
  2014 WL 3963124 (S.D.N.Y. Aug. 13, 2014) ................................................................10, 15

*Am. Broad. Cos. v. Aereo, Inc.*,
  134 S. Ct. 2498 (2014) ....................................................................................................9

*Apple Computer, Inc. v. Franklin Computer Corp.*,
  714 F.2d 1240 (3d Cir. 1983) ..........................................................................................18

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ...........................................................................................9

*Broadcast Music, Inc. v. Prana Hospitality, Inc.*,
  158 F. Supp.3d 184 (S.D.N.Y. 2016) ...............................................................................13

*China Cent. Television v. Create New Tech. (HK) Ltd.*,
  No. CV 15-1869, 2016 WL 6871281 (C.D. Cal. Apr. 4, 2016) ............................................20

*China Cent. Television v. Create New Tech. (HK) Ltd.*,
  No. CV 15-1869 (ECF No. 192) (C.D. Cal. May 31, 2016)........................................1, 11, 20

*City of N. Y. v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011).............................................................................................7

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
  259 F.3d 1186 (9th Cir. 2001) ........................................................................................10

*Cotton v. Slone*,
  4 F.3d 176 (2d Cir. 1993)................................................................................................8

*D.H. Blair & Co. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006)..............................................................................................8

*Dish Network L.L.C. v. Butt*,
  No. 15-cv-00706 (ECF No. 124) (E.D. Va. Jan. 24, 2017) (Judgment Order)...................2, 11

*Disney Enters., Inc. v. Merchant*,
  No. 6:05-CV-1489, 2007 WL 1101110 (N.D.N.Y. Apr. 10, 2007)........................................17

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006).......................................................................................................16

*EM Ltd. v. Republic of Argentina*,
  695 F.3d 201 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML
  Capital, Ltd.*, 134 S. Ct. 2250 (2014) ...................................................................................20

*Eros Entm't, Inc. v. Melody Spot, L.L.C.*,
  No. 99 CV 1157 SJ, 2005 WL 4655385 (E.D.N.Y. Oct. 11, 2005) ........................................11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991).................................................................................................................8

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*,
  807 F.2d 1110 (2d Cir. 1986)...........................................................................................11, 12

*Graduate Mgmt. Admission Council v. Raju*,
  267 F. Supp. 2d 505 (E.D. Va. 2003) ....................................................................................11

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,
  826 F. Supp. 2d 619 (S.D.N.Y. 2011)...............................................................................10, 12

*Langenberg v. Sofair*,
  No. 03 Civ. 8339 (KMK) (FM), 2006 WL 3518197 (S.D.N.Y. Dec. 7, 2006) ........................8

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  658 F.3d 936 (9th Cir. 2011) .................................................................................................11

*Lyons P'ship, L.P. v. AAA Entm't Inc.*,
  No. 98CIV.0475DABMHD, 1999 WL 1095608 (S.D.N.Y. Dec. 3, 1999)..............................15

*N.A.S. Import, Corp. v. Chenson Enters., Inc.*,
  968 F.2d 250 (2d Cir. 1992)...................................................................................................12

*N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*,
  No. 89 Civ. 6082RWS (KAR), 1991 WL 113283 (S.D.N.Y. June 14, 1991),
  *aff'd*, 954 F.2d 847 (2d Cir. 1992)........................................................................................12

*Nat'l Football League v. PrimeTime 24 Joint Venture*,
  131 F. Supp. 2d 458 (S.D.N.Y. 2001)...............................................................................10, 12

*New York v. Green*,
  420 F.3d 99 (2d Cir. 2005).......................................................................................................8

*The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing
  Imp. & Exp. Ltd.*,
  No. 10-CIV-1630 (S.D.N.Y. Sept. 8, 2010) ............................................................................20

*Peer Int'l Corp. v. Luna Records, Inc.*,
  887 F. Supp. 560 (S.D.N.Y. 1995) .........................................................................................11

iii

*Peer Int'l Corp. v. Pausa Records, Inc.*,
   909 F.2d 1332 (9th Cir. 1990) ......................................................................10

*Psihoyos v. John Wiley & Sons, Inc.*,
   748 F.3d 120 (2d Cir. 2014)...........................................................................15

*Rogers v. Ecolor Studio*,
   No. 11-CV-4493, 2013 WL 752256 (E.D.N.Y. Feb. 7, 2013), *report and
   recommendation adopted*, No. 11-CV-4493(ARR)(RER), 2013 WL 750120
   (E.D.N.Y. Feb. 27, 2013) ...............................................................................15

*Rovio Entm't, Ltd. v. Allstar Vending, Inc.*,
   97 F. Supp. 3d 536 (S.D.N.Y. 2015).........................................................12, 14

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010)........................................................................16, 17

*Stevens v. Aeonian Press, Inc.*,
   No. 00 Civ. 6330(JSM),2002 WL 31387224 (S.D.N.Y. Oct. 23, 2002) ................12

*Tu v. TAD Sys. Tech. Inc.*,
   No. 08-CV-3822 (SLT)(RM), 2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009)...........10, 13, 14

*TVB Holdings (USA), et al. v. HTV Int'l Ltd., et al.*,
   No. 16-cv-1489 (ECF No. 85-2) (E.D.N.Y. June 1, 2018).................................2, 11

*Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*,
   373 F.3d 241 (2d Cir. 2004)..............................................................................8

*Warner Bros. Entm't, Inc. v. Doe*,
   No. 14-cv-3492 (S.D.N.Y. Oct. 3, 2014) ...........................................................20

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012) .............................................9, 18

**Federal Statutes**

17 U.S.C.
   §§ 101 *et seq*. (Copyright Act)............................................................. *passim*
   § 106(1).......................................................................................8, 9
   § 106(3)-(4) .................................................................................8, 9
   § 501...........................................................................................8, 9
   § 502(a) .........................................................................................16
   § 504(c) ...........................................................................................9
   § 505.............................................................................................16

iv

28 U.S.C.
 § 1331........................................................................................................................7
 § 1338........................................................................................................................7
 § 1391(b)...................................................................................................................7
 § 1961(a)..................................................................................................................21

**Rules**

Fed. R. Civ. P.
 55.............................................................................................................................7
 55(a)........................................................................................................................7
 55(b)........................................................................................................................8
 69(a)(2)..................................................................................................................20

**Other Authorities**

*International Copyright Relations of the United States,* Circular 38. A, U.S.
 Copyright Office (https://copyright.gov/circs/circ38a.pdf) ......................................3

4852-1407-9337v.13 0090227-000009

Plaintiffs Asia TV USA Ltd., MSM Asia Ltd., Star India Private Ltd., Viacom18 Media Private Limited, ARY Digital USA LLC (collectively, the "Network Plaintiffs"), and Plaintiff DISH Network L.L.C. ("DISH") respectfully submit this memorandum of law in support of their motion for default judgment against Defendants Dibia Networks Limited ("Dibia") and Abdellah Hamead ("Hamead").

## I.      INTRODUCTION

Television broadcasters face an onslaught of infringement by pirates who seek to cash in on valuable TV programming without paying a licensing fee. These infringers—like Defendants—intercept TV programming and then provide that pirated programming, without authorization, over the internet to viewers through set-top boxes or other devices or services.

In this case, Defendants pirate the Network Plaintiffs' TV programming by selling the "BTV" set-top device and related services online and through local resellers to customers in the United States. Through these set-top boxes and the BTV service, Defendants—without permission or payment to Plaintiffs—stream infringing copies of Plaintiffs' copyrighted TV programs to owners of those devices. Each BTV device includes a software interface that enables BTV users to access and view infringing streams of the Network Plaintiffs' copyrighted television programs 24 hours per day, 7 days per week. Despite receiving numerous cease and desist letters, Defendants continue to brazenly intercept, stream, and infringe Plaintiffs' copyrighted programs.

This action concerns willful infringement by unrepentant defendants. And given that Defendants capture entire channels of Plaintiffs' television programming and stream that programming over the Internet on a continual basis, the scale of Defendants' ongoing infringement is immense. In prior cases against similar infringers, courts have issued permanent injunctions and statutory damages in amounts exceeding what is sought here. *See, e.g., China*

1

*Cent. Television v. Create New Tech. (HK) Ltd.*, No. CV 15-1869 (ECF No. 192), at 4, ¶ 7 (C.D. Cal. May 31, 2016) (Order Granting Plaintiffs' Motion for Default Judgment and Permanent Injunction Against Defendants) (awarding $55 million in copyright and trademark statutory damages to Plaintiffs); *Dish Network L.L.C. v. Butt*, No. 15-cv-00706 (ECF No. 124) (E.D. Va. Jan. 24, 2017) (Judgment Order) (awarding over $25 million in statutory damages, consisting of $150,000 per work infringed); *TVB Holdings (USA), et al. v. HTV Int'l Ltd., et al.*, No. 16-cv-1489 (ECF No. 85-2) (E.D.N.Y. June 1, 2018) (awarding $46,140,000 in statutory damages, consisting of $30,000 per work infringed) (Declaration of L. Danielle Toaltoan, dated September 25, 2018 ("Toaltoan Decl."), Exs. B - F)

Plaintiffs sent dozens of pre-action cease and desist letters to Defendants (Declaration of Alex Fonoroff, dated August 9, 2018 ("Fonoroff Decl."), Ex. B, (Declaration of Nicolas Anagnostpoulos, dated September 24, 2018 ("Anagnostpoulos Decl."), ¶¶ 4-7.) and thereafter served Defendants with the Complaint in this infringement action on September 20, 2017 (ECF No. 13) (Dibia) and October 19, 2017 (Hamead). Defendants willfully ignored Plaintiffs' cease and desist letters, continued their infringement unabated even after this lawsuit was commenced, and then defaulted.  Plaintiffs seek a default judgment to obtain economic and injunctive relief for Defendants' massive, willful and ongoing infringement of Plaintiffs' copyrighted television programs.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' Businesses and Television Programming

Network Plaintiffs are TV broadcasters and distributors who have rights to exploit in the United States a wide variety of popular TV programming from India and Pakistan, including

episodic dramas, the majority of which is in the Hindi and Urdu languages[1] (the "TV Programming"). (Complaint (ECF No. 1) ("Compl.") ¶¶ 31, 43.)[2] The Network Plaintiffs hold exclusive rights to reproduce, publicly perform, transmit, and distribute the TV Programming in all media in the United States. (*Id.* ¶¶ 12-22.) In the United States, the Network Plaintiffs distribute the TV Programming and the TV channels featuring the Programming through license agreements with cable and satellite carriers and other television distributors, including DISH, who pay Network Plaintiffs or their affiliates licensing fees for the right to distribute their TV channels and programs to customers in the United States. (*Id.* ¶¶ 22-23.) As a result of such agreements, DISH also holds certain exclusive rights to reproduce, distribute, and publicly perform the TV Programming in the United States.  (*Id.* ¶ 23.)

### B.      Defendants' BTV Device and Pirate Retransmission Service

Plaintiffs brought this copyright infringement action to combat the global pirate television services that Defendants have provided to their customers using the "BTV" set-top box. (*Id.* ¶ 1.) The BTV device is a set-top box that unlawfully streams the Network Plaintiffs' TV Programming to BTV customers over the Internet without the customers paying subscription fees to the Plaintiffs or to their authorized licensees. (Compl. ¶ 34) (*See* Declaration of Nick Braak, dated September 24, 2018 ("Braak Decl.") ¶¶ 11, 27, 40.) The BTV device connects to a BTV user's internet connections, through a WiFi signal or an Ethernet cable, to access streaming video content. (Compl. ¶ 35.) (*See* Braak Decl., ¶ 28.) Once the BTV device is connected to a user's television set and Internet connection, it is ready for use, with no installation of apps or

---

[1] India and Pakistan are signatories to the Berne Convention for the Protection of Literary and Artistic Works, the key international agreement governing copyright, which requires signatory countries to afford equal treatment to the works of authors from other signatories. *See International Copyright Relations of the United States,* Circular 38. A, U.S. Copyright Office (https://copyright.gov/circs/circ38a.pdf).

[2] *See also, e.g.*, Fonoroff Decl., Exhibit A (list of Network Plaintiffs' copyrighted TV episodes infringed by Defendants).

user agreement required before the user is able to stream multiple channels within a single live mode app. (Compl. ¶ 36.) (*See* Braak Decl., ¶¶ 20.) As early as September 2014, Defendants have streamed the Network Plaintiffs' TV Programming 24 hours a day/7 days a week, by (1) capturing television signals being transmitted by Network Plaintiffs and other broadcasters in India, Pakistan, and elsewhere; (2) converting those signals into a digital format suitable for streaming over the internet; (3) creating and disseminating digital copies of Network Plaintiffs' TV Programming to store on United States servers; and (4) transmitting the pirated video streams of the Network Plaintiffs' TV Programming to BTV users in the United States over the Internet through the "Live" section of the BTV device (the "BTV Retransmission Service"). (Compl. ¶ 31.) (*See* Braak Decl., ¶ 29.) (*See* Anagnostopoulos Decl., ¶ 5.) Defendants also purport to offer Plaintiffs' TV Programming through video on demand services.

It is clear from the design, marketing, and cost of the BTV device that it has no purpose other than to deliver infringing TV Programming to BTV users. (Compl., ¶¶ 32, 44.) Defendants designed the BTV box to stream the TV Programming via pre-populated apps and channel icons available through the menu options on the device. (Compl. ¶¶ 37-41.) (*See* Braak Decl., ¶ 30.) The BTV device's TV section also allows users to view channels grouped by language (e.g., Hindi and Urdu). (Compl. ¶ 43.) (Braak Decl., ¶ 38.) Among the TV Programming infringed by Defendants are 44 television episodes owned by the Networks Plaintiffs that have been registered with the United States Copyright Office (the "Registered Works"). (*See* Fonoroff Decl., ¶ 4, Ex. A.) (list of copyright registrations) (Declaration of Akhilesh Gupta, dated August 2, 2018 ("Gupta Decl."), Ex. B.) (Declaration of Jaideep Janakiram, dated July 30, 2018 ("Janakiram Decl."), Ex. B.) (copies of registration certificates).

At least as recently as August 30, 2018, Defendants have offered BTV devices for online sale to customers in this judicial district for approximately $299 per device via the fully commercially interactive website located at the URL "www.btv.co" (the "BTV Website") (Compl. ¶¶ 56-64.) (*See* Braak Decl., ¶ 7.)  BTV devices are also being offered for sale to customers in this judicial district for about $269 per device via the interactive website located at the URL www.btvbox.com. (the "BTV Box Website") (*See* Braak Decl., ¶¶ 5-6.) For this one-time, up-front payment, BTV customers in the United States have received access to view unlicensed television channels and television programs from India, Pakistan, and other countries indefinitely, with no monthly or yearly fees. (Compl.  ¶¶ 34, 52.) (*See* Braak Decl., ¶ 6.)  In addition, several vendors on eBay are listing the BTV device, including at least one shop in Jackson Heights, Queens whose eBay listing page says it has sold 20 units and has seven more available. (*See* Braak Decl., ¶ 7.) The availability of infringing TV Programming from the Network Plaintiffs has represented a significant draw and motivation for purchasers of the BTV device and enabled Defendants to sell more BTV devices at higher prices than they otherwise could. (Compl. ¶ 46.) Unbranded Android-based set-top boxes without such access to infringing programming sell for as low as $20 at retail. (Compl. ¶ 46.)

In addition, Defendants aggressively advertise and promote the BTV Retransmission Service and the infringing capabilities of the BTV device. (Compl. ¶¶ 48-54.) Defendants' marketing materials tout the ability of BTV users to stream the Network Plaintiffs' copyrighted TV Programming. For example, Defendants promote the BTV device on the BTV Website and its Facebook page located at www.facebook.com/Btv-Box-173483802696603 (the "BTV Facebook Page"). (Compl. ¶ 54.) (Braak Decl., ¶ 17.) Moreover, Defendants and their retailers promote the availability of unlicensed TV Programming from the Network Plaintiffs through the

5

device on the BTV Website and the BTV Box Website by identifying the Network Plaintiffs' TV channels and shows available for streaming on the BTV device. (*See* Braak Decl., ¶¶ 14-16, Ex. 3.) (*See* Declaration of Surender Singh Mann, dated September 26, 2018 ("Mann Decl."), ¶ 4.)

Defendants undoubtedly profit from the copyright infringement carried out via the BTV Retransmission Service. Defendants obtain the Network Plaintiffs' TV Programming illegally, without paying for licenses, and then provide U.S. customers with a much cheaper, one-time payment for that TV Programming than if those customers had subscribed to the TV Programming through authorized providers in the United States, who must pay for the right to distribute such Programming to U.S. customers. (Compl. ¶¶ 22-23, 27.) Further, the availability of infringing TV Programming from the Network Plaintiffs on the BTV device represents a significant draw and motivation for purchasers of that device, enabling Defendants to sell more BTV devices at higher prices than they otherwise could. (Compl. ¶ 46.) Defendants thus rely for the success of their business on the infringing public performances they transmit through the BTV Retransmission Service. (Compl. ¶¶ 46-47.)

### C.   Defendants' Default

Prior to filing this lawsuit, Plaintiffs sent dozens of cease and desist letters to Defendants at the contact information listed on the BTV Website, demanding that they stop their infringing activities. (Compl. ¶ 55.)  (Fonoroff Decl., ¶¶ 5-6, Ex. B.) (Anagnostpoulos Decl., ¶¶ 4-6.) The cease-and-desist letters identified infringing channels and provided a representative list of the Network Plaintiffs' TV Programs streamed without authorization through the BTV device. Defendants did not respond to any of the cease-and-desist letters, nor did they cease their infringing activities. (Compl. ¶ 55.)  (Fonoroff Decl., ¶ 6.) (Anagnostpoulos Decl., ¶ 7.)  Instead, despite receipt of these notices, Defendants continued to deliberately operate the BTV Retransmission Service, continued to unlawfully stream Plaintiffs' TV Programming, and

6

4852-1407-9337v.13 0090227-000009

continued to market, advertise, and promote the infringing capabilities of the BTV device, with full knowledge of the infringing nature of their activities. (*See* Compl. ¶ 55.)

Plaintiffs filed this action on September 13, 2017 (ECF No. 1).  Plaintiffs thereafter served the Summons, Complaint and related papers on Defendant Dibia on September 20, 2017 (ECF No. 13) and on Defendant Hamead on October 19, 2017 (Toaltoan Decl., ¶ 2.) Defendants failed to respond to the Complaint. Accordingly, the Clerk of Court entered a default against Defendant Hamead on January 29, 2018 (ECF No. 22) and against Defendant Dibia on February 13, 2018 (ECF No. 26) (Toaltoan Decl., ¶ 2, Ex. A.)

### III.   ARGUMENT

#### A.   Jurisdiction

This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1338 because they arise under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* (Compl. ¶ 27.) Personal jurisdiction over Defendants is proper because they have purposefully conducted business activities within the State of New York by, among other things, transmitting, selling and supplying the BTV Retransmission Services to customers and retailers in the State of New York and the Southern District of New York, causing injury to Plaintiffs in this State and in this District. (*Id.* ¶¶ 28, 56-64.) (*See* Braak Decl., ¶¶ 5-6.) Venue is proper in this District under 28 U.S.C. § 1391(b). (*Id.* ¶ 28.)

#### B.   Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. *See City of N. Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128-29 (2d Cir. 2011). First, under Fed. R. Civ. P. 55(a), the clerk must enter a notation of default when a party has demonstratively failed to defend. Here, the Clerk of Court of this District has entered a default against Defendants. (*See* Toaltoan Decl., Ex. A.) Second, upon obtaining a clerk's

notation of default, "a plaintiff must next seek a judgment by default under Rule 55(b)." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The Second Circuit has held that where a plaintiff's allegations are well pled, and a defendant has failed to appear in connection with the case, default judgment is appropriate. *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). Following an entry of default, all factual allegations of the complaint, except those pertaining to the amount of damages, must be accepted as true. *See Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993). In other words, a party's default is deemed an admission of the plaintiff's well-pled allegations of fact pertaining to liability. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006). "Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (i) determined the proper rule for calculating damages on the claim, and (ii) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment." *Langenberg v. Sofair*, No. 03 Civ. 8339 (KMK) (FM), 2006 WL 3518197, at *1 (S.D.N.Y. Dec. 7, 2006) (internal citations omitted).

## C.    Defendants Are Liable for Copyright Infringement

Plaintiffs have shown that Defendants are liable for direct copyright infringement. To prove their direct copyright infringement claim, Plaintiffs must establish: (1) their ownership of valid copyrights; and (2) violation by Defendants of at least one of Plaintiffs' exclusive rights in those copyrights. *See* 17 U.S.C. § 501; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Among the rights the Copyright Act confers on owners of copyrights in audiovisual works and motion pictures are the exclusive rights "to reproduce the copyrighted work," "to distribute copies . . . of the copyrighted work to the public," and "to perform the copyrighted work publicly." 17 U.S.C. § 106 (1), (3)–(4).

8

Through their well-pled allegations in the Complaint, Network Plaintiffs have established that they are the owners of valid copyrights and/or the relevant exclusive rights under United States copyright law in Plaintiffs' copyrighted TV programs. (*See* Compl. ¶¶ 12-24, 65-69.) (Gupta Decl., ¶ 4, Ex. A.) (Janakiram Decl., ¶ 4, Ex. A.) Plaintiffs have also established Defendants' violation of their reproduction, distribution and performance rights in their copyrighted works. Defendants stream infringing copies of Plaintiffs' copyrighted TV Programming to their end user customers. (*See id.* ¶¶ 30-55.) By streaming infringing copies of Plaintiffs' copyrighted TV Programming, Defendants infringe Plaintiffs' public performance rights in those works. *See Am. Broad. Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2510 (2014); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 277–78 (2d Cir. 2012). Further, by copying infringing digital video files of Plaintiffs' TV Programming on servers in the United States (*see* Braak Decl., ¶¶ 29, Ex. 4.) for streaming to BTV devices, Defendants infringe Plaintiffs' reproduction and distribution rights. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 122 (2d Cir. 2010).

Plaintiffs have thus established that Defendants infringe Plaintiffs' copyrights by reproducing, distributing and publicly performing Plaintiffs' copyrighted works, without authorization from Plaintiffs, in violation of 17 U.S.C. §§ 106(1) and (3)–(4) and 501.

### D.    Defendants' Copyright Infringement Entitles Plaintiffs to Statutory Damages

As discussed below, Plaintiffs have identified 44 separate TV episodes that Plaintiffs registered with the U.S. Copyright Office and that Defendants infringed. (*See* Compl. ¶¶ 12, 14, 16, 18, 66) (Fonoroff Decl., Ex. A.) These registered episodes represent only a very small fraction of the works infringed by Defendants.  Plaintiffs elect to recover statutory damages for Defendants' copyright infringement. Where, as here, there is infringement of registered works, 17 U.S.C. § 504(c) provides for an award of statutory damages of up to $30,000 per work

infringed in cases of non-willful infringement, and up to $150,000 per work infringed in cases of willful infringement.

Defendants—as a strategic tactic to avoid defending this action on the merits—have intentionally defaulted. As a result, Plaintiffs do not know the full extent of Defendants' sales and profits and have no readily independent means of establishing that amount with any certainty. That, however, does not impair Plaintiff's claim for statutory damages.  *See Agence France Presse v. Morel*, 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014) ("In the context of the Copyright Act, it is clear that statutory damages can be awarded even in the absence of sufficient evidence supporting actual damages…"); *Tu v. TAD Sys. Tech. Inc.*, No. 08-CV-3822 (SLT)(RM), 2009 WL 2905780, at *6 (E.D.N.Y. Sept. 10, 2009) ("Because of Defendants' default in this matter, the Court has almost no evidence to adjudge the" amount of actual damages; "[y]et, the failure to establish actual damages does not impair this Court's ability to devise a proper statutory award", awarding statutory maximum of $150,000 per work infringed).

Courts have wide latitude in determining the amount of statutory damages in a particular case. And in cases like this one where the Defendants' infringement is flagrant, courts in the Second Circuit and elsewhere have granted plaintiffs large statutory damages awards for willful copyright infringement. *See, e.g.*, *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 631-32 (S.D.N.Y. 2011) (awarding maximum statutory damages); *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 475, 482 (S.D.N.Y. 2001) (awarding then-maximum statutory damages of $100,000 per work for 18 infringed telecasts); *accord Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1195 (9th Cir. 2001) (affirming $31.68 million statutory damages award); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336-37 (9th Cir. 1990) (affirming award of maximum

10

statutory damages); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946-47 (9th Cir. 2011) (same); *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511-12 (E.D. Va. 2003) (awarding maximum statutory damages for 22 infringed works).

Indeed, in cases involving very similar facts—where the defendant has willfully provided infringing TV content to users of internet-connected set-top boxes—courts have granted large statutory damages awards, up to and including maximum statutory damages per work infringed. *See Create New Tech.*, No. CV 15-1869 [ECF No. 192], at 4, ¶ 7 (over $55 million in copyright and trademark statutory damages); *Dish Network L.L.C. v. Butt*, No. 15-cv-00706 (ECF No. 124) (E.D. Va. Jan. 24, 2017) (Judgment Order) (awarding $25 million, consisting of $150,000 per work infringed); *TVB Holdings (USA), et al. v. HTV Int'l Ltd., et al.*, No. 16-cv-1489 (ECF No. 85-2) (E.D.N.Y. June 1, 2018) (awarding $46,140,000 in statutory damages, consisting of $30,000 per work infringed) (Toaltoan Decl., Exs. B, C and F).

The factors considered by courts to determine the amount of statutory damages in copyright infringement cases include: (i) expenses saved and profits reaped by defendant; (ii) revenues lost by plaintiff; (iii) value of the copyright; (iv) deterrent effect on other infringers besides the defendant; (v) whether the defendant's conduct was innocent or willful; (vi) whether a defendant has cooperated in providing records from which to assess the revenue from infringement; and (vii) the potential for deterring the defendant. *See Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986). Under the Copyright Act, enhanced statutory damages are intended to compensate plaintiffs and deter future willful infringement. *See Eros Entm't, Inc. v. Melody Spot, L.L.C.*, No. 99 CV 1157 SJ, 2005 WL 4655385, at *10 (E.D.N.Y. Oct. 11, 2005); *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568 (S.D.N.Y. 1995). Statutory damages serve as an important deterrent, and "'the court must award

an amount that will put the defendant on notice that it costs more to violate the copyright law than to obey it.'" *Stevens v. Aeonian Press, Inc.*, No. 00 Civ. 6330(JSM),2002 WL 31387224, at *1 (S.D.N.Y. Oct. 23, 2002) (citation omitted); *see also N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, No. 89 Civ. 6082RWS (KAR), 1991 WL 113283, at *4 (S.D.N.Y. June 14, 1991), *aff'd*, 954 F.2d 847 (2d Cir. 1992). The Copyright Act gives courts "wide discretion" in applying these factors to set an award of statutory damages. *Fitzgerald Publ'g*, 807 F.2d at 1116. Application of the relevant factors supports a substantial award here.

### 1.    Defendants' Willfulness

Defendants' infringement of Plaintiffs' copyrighted TV programming is unquestionably willful and, indeed, egregious. Willfulness in this context "'means that the infringer either had actual knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights.'" *Nat'l Football League*, 131 F. Supp. 2d at 475-86 (citation omitted). Knowledge "need not be proven directly but may be inferred from the defendant's conduct," *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992), and where a defendant has defaulted, the Court may infer willfulness on that ground alone. *See Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) ("Copyright infringement is deemed willful by virtue of a defendant's default."); *Hounddog Prods.*, 826 F. Supp. 2d at 631-32 (inferring willfulness from default and awarding maximum statutory damages).

Plaintiffs have shown that Defendants have willfully engaged in the infringing reproduction, distribution and public performance of Plaintiffs' copyrighted works. Specifically, Defendants have continued to infringe Plaintiffs' TV programing 24 hours a day/7 days a week even after being sent multiple cease and desist letters and even after Plaintiffs filed this lawsuit. Indeed, the infringement continues today. (Fonoroff Decl., ¶¶ 5-6, Ex. B) (Anagnostpoulos

Decl., ¶¶ 5-7.) Plaintiffs have also presented evidence that Defendants actively promote and advertise use of the BTV devices to infringe Plaintiffs' rights. (*See* Braak Decl., ¶¶ 14-17.) Defendants' willfulness is manifest.

### 2.    Deterrent Effect on Defendants and Other Infringers

Given the consumer demand for Plaintiffs' TV Programming, it is safe to assume that Defendants' sales of the BTV device and of subscriptions to the BTV Retransmission Service have been significant. (Compl. ¶ 46.) Moreover, Defendants do not merely infringe a television episode or two, but literally pirate all of the Plaintiffs' TV programming by illegally streaming the Network Plaintiffs' TV channels on a continual basis.  (Braak Decl., ¶¶ 30, 40.) This is exactly the sort of large scale illegal enterprise that courts seek to deter through significant statutory damages awards. As stated by this Court:

> It is an unfortunate irony that the progression of technology diminishes our ability to safeguard the intellectual property that is the lifeblood of further technological progress. Defendants' misuse of technology to pirate Plaintiffs' product was an egregious and willful act designed to "sneer" in the face of Plaintiffs' copyright and intellectual property laws. An award of the enhanced statutory maximum is appropriate and reasonable to compensate Plaintiffs and to deter Defendants and future infringers.

*Tu*, 2009 WL 2905780, at *6; *see also Broadcast Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp.3d 184, 197-98 (S.D.N.Y. 2016) (enlarging statutory damage award to deter future conduct and in response to considerable evidence that defendants willfully infringed plaintiffs' copyrights by, among other things, disregarding a total of 48 demand letters).

### 3.    Defendants Failed to Provide Records

By their failure to appear, Defendants have also robbed Plaintiffs of their entitlement to discovery of vital information, including the amount of Defendants' sales, the identity of their suppliers, manufacturers and agents and their affiliation with other potential infringers of the Network Plaintiffs' TV Programming. Defendants thus have doubly harmed Plaintiffs:  first by

soliciting massive infringement of Plaintiffs' TV Programming, and second by hobbling

Plaintiffs' ability to investigate and pursue a larger copyright protection program.  This leaves

Plaintiffs with the sole available remedy of a substantial award of statutory damages.

Defendants' non-cooperation therefore further supports substantial statutory damages.

### 4.      Value of the Copyrights

Plaintiffs own exclusive rights in popular TV programming in the enormous television

markets of India and Pakistan, among others, with consequently large audiences among Hindi

and Urdu-speaking people in the United States. (*See* Compl. ¶¶ 10, 12-23.) This is precisely why

Defendants have flooded the U.S. market with pirated Indian and Pakistani TV programming.

(*See* Compl. ¶ 46.) The value of Plaintiffs' copyrighted works is inestimable, and Defendants'

infringing activities deprive Plaintiffs of licensing revenue from legitimate exploitation of their

copyrighted TV Programming and deprive Plaintiffs of the right and ability to control when,

where, and how Plaintiffs' copyrighted TV Programming is reproduced, distributed and

performed.  (Gupta Decl., ¶ 7) (Janakiram Decl., ¶ 7) (George Decl., ¶ 7.

### 5.      Profits Reaped by Defendants

As discussed above, the Defendants have failed to appear before this Court and have

robbed Plaintiffs of the opportunity for discovery into the scope of their operations.  While

Plaintiffs have little knowledge of the true extent of Defendants' operations, the fact that

Defendants marketed their BTV devices through the Internet to a "virtually limitless number of

customers" creates a presumption of high volumes of sales. *Tu*, 2009 WL 2905780, at *6 (citing

cases).

In this context, the Court is, at the very least, entitled to assume significant profits reaped

by Defendants and to place heavy emphasis on the willfulness and deterrence factors. *See Rovio*

*Entm't*, 97 F. Supp. 3d 536 (awarding $100,000 per copyrighted work infringed in light of

defendants' default); *Rogers v. Ecolor Studio*, No. 11-CV-4493, 2013 WL 752256, at *7 (E.D.N.Y. Feb. 7, 2013) ("[D]ue to Defendants' default and failure to participate in pretrial discovery . . .[,] the Court's statutory damages determination [wa]s informed significantly by the imperatives of penalizing Defendants' willful infringement and deterring other potential infringers."), *report and recommendation adopted*, No. 11-CV-4493(ARR)(RER), 2013 WL 750120 (E.D.N.Y. Feb. 27, 2013); *Lyons P'ship, L.P. v. AAA Entm't Inc.*, No. 98CIV.0475DABMHD, 1999 WL 1095608, at *6 (S.D.N.Y. Dec. 3, 1999) ("[B]y virtue of their infringement and their default in this case, these defendants have made it difficult or impossible for plaintiff to develop a detailed record of the amount of the infringers' revenues derived from the infring[ement] . . . . Of necessity, then, ambiguities in the record must be read against the defendants.").

Moreover, courts in this Circuit have held that evidence of actual damages is not necessary in awarding statutory damages. As the Second Circuit recently ruled, "[a]lthough revenue lost is one factor to consider, we have not held that there must be a direct correlation between statutory damages and actual damages. To suggest otherwise is to ignore the various other factors a court may consider and the purposes of statutory damages in the willful infringement context." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014); *see also Agence France Presse v. Morel*, 2014 WL 3963124, at * 10 (S.D.N.Y. Aug, 13, 2014) ("In the context of the Copyright Act, it is clear that statutory damages can be awarded even in the absence of sufficient evidence supporting actual damages.)

### E.    Damages Sought in This Case

In connection with this motion, Plaintiffs have enumerated 44 separate TV episodes that are registered with the U.S. Copyright Office that Defendants have infringed. (Fonoroff Decl. ¶¶ 4, Ex. A.) Based on the above discussed aggravating factors, and in particular the continued and

15

comprehensive nature of the infringement, the Court is well within its discretionary authority to award the maximum statutory damages of $150,000 per registered work infringed by Defendants' flagrantly willful infringement. Based on the enumerated 44 infringed copyrighted works, this amounts to statutory damage of $**6,600,000** (i.e., $150,000 per work infringed x 44 registered works = $6,600,000.00). Again, these 44 infringed works represent only a small fraction of Defendants' massive infringement of Plaintiffs' copyrighted television TV Programming. Defendants' BTV devices and infringing retransmission service illegally stream Plaintiffs' entire channels, and the individual copyrighted television episodes that appear on those channels, 24 hours a day, seven days a week. They have done so for years.

Under these circumstances, an award of $150,000 per work infringed for each of the 44 TV episodes registered with the US Copyright Office—for a total of $**6,600,000**—is entirely warranted and appropriate. Notably, Plaintiffs are not seeking an award of their attorneys' fees and costs, which they are entitled to do as the prevailing party under 17 U.S.C. § 505.

### F.      Plaintiffs Are Entitled to a Permanent Injunction

In addition to the foregoing relief, Plaintiffs respectfully request entry of a permanent injunction enjoining Defendants from further infringement. The Copyright Act provides that a federal court has the power to issue "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

To obtain a permanent injunction, a plaintiff must show: (1) an irreparable injury; (2) the inadequacy of remedies available at law, such as monetary damages; (3) that, considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010). These "*eBay* factors" weigh in favor of issuing the requested injunction.

16

### 1.      Plaintiffs Have Suffered Irreparable Injury

The Second Circuit in *Salinger v. Colting* recognized that while courts must not simply presume irreparable harm in copyright cases, "[t]his is not to say that most copyright plaintiffs who have shown a likelihood of success on the merits would not be irreparably harmed absent [] injunctive relief." *Salinger*, 607 F.3d at 82. Furthermore, "courts have tended to issue injunctions in this context because 'to prove the loss of sales due to infringement is . . . notoriously difficult.'" *Id.* at 81 (quoting *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971)). Consequently, irreparable harm has been readily found in copyright infringement cases. *Salinger* concerned a preliminary injunction, but courts in this Circuit have said much the same about permanent injunctions. *See, e.g.*, *Disney Enters., Inc. v. Merchant*, No. 6:05-CV-1489, 2007 WL 1101110, at *6 (N.D.N.Y. Apr. 10, 2007) ("Permanent injunctions are routinely awarded in favor of copyright owners whose protected works have been misappropriated in order to serve the public's interest in upholding copyright protections.").

Defendants' unauthorized public performance, distribution and display of Plaintiffs' TV Programming cause Plaintiffs irreparable harm in a number of ways, including by (a) directly competing with authorized subscriptions to their television Programming, thereby causing lost market share and price erosion for legitimate services; (b) disrupting the Network Plaintiffs' relationships with authorized distributors in the United States and elsewhere; (c) depriving Plaintiffs of their exclusive rights to control the distribution and quality of the copyrighted TV Programming, in particular the Network Plaintiffs' ability to grant more lucrative exclusive licenses; and (d) interfering with Plaintiffs' ability to develop a lawful market for the TV Programming in the United States. (Gupta Decl., ¶ 7.) (Janakiram Decl., ¶ 7.) Moreover, given Defendants' strategic default in this matter and their overseas locations (with Dibia in Hong Kong and Hamead in Japan), Defendants will likely attempt to evade paying any money

judgment. These facts further support a finding of irreparable harm. *See, e.g.*, *WPIX, Inc.*, 691 F.3d at 285–87 (infringing internet streaming of plaintiffs' TV programming constituted irreparable harm since (i) that streaming would substantially diminish the programming's value, (ii) the plaintiffs' losses were difficult to measure and monetary damages insufficient to remedy the harms, and (iii) the defendant would have been unable to pay damages).

### 2. The Balance of Hardships and Public Interest Favor an Injunction

As explained above, the harm to Plaintiffs is irreparable. On the other hand, requiring Defendants to cease infringing Plaintiffs' copyrights will not harm Defendants because they have no legitimate interest in continuing the infringement. Further, "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming." *WPIX Inc.*, 691 F.3d at 287. "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections . . ." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983).

### 3. This Court Has Authority to Order Third-Party Injunctive Relief

Given the breadth of Defendants' intentional infringement, which was orchestrated from outside the United States, and their reliance on domain name registries and registrars, and internet service providers, to update the software on their devices and stream infringing video content to users of their devices (see Braak Decl., ¶¶ 21-26, describing forensic analysis of BTV device and the domain names and servers used by Defendants to facilitate its operation), the Court should order that: (i) third parties who provide sales, distribution, shipping or logistics services for BTV Devices and/or Comparable Systems cease distributing, selling, advertising,

18

marketing or promoting any BTV Device and/or Comparable System; (ii) registries and registrars disable the domain names used by the BTV device, the BTV Retransmission Service, or any comparable device or service offered by Defendants now or in the future, and transfer those domains to Plaintiffs; (ii) third parties who provide web, server or file hosting services, data center or colocation services, or primary and backup storage services (including but not limited to cloud storage services) used in connection with any of Defendants' infringing activities, including but not limited to the third parties providing hosting services for the internet servers identified by Plaintiffs' investigation and forensic analysis of the BTV Device (including but not limited to servers providing streaming video, application files, and BTV Device initialization, operation and authentication) cease providing such services to Defendants; and (iii) third parties who provide services used in connection with the enjoined activities, including but not limited to back-end service providers, service providers routing traffic or providing bandwidth, content delivery networks, and domain name server systems (including but not limited to CloudFlare, Incapsula and DNSPod), content hosting websites (including but not limited to GitHub), search-based online advertising services (such as through paid inclusion, paid search results, sponsored search results, sponsored links, and internet keyword advertising), domain name registration privacy protection services, providers of social media services (including but not limited to Facebook and Twitter), user generated and online content services (including but not limited to YouTube) and data security services (including but not limited to denial-of-service attack prevention, firewall and proxy services), cease providing any hosting services used by the BTV device, the BTV Retransmission Service, or any comparable device or service offered by Defendants now or in the future in connection with the infringement.

19

This Court's power to order the disabling of domain names is well established. *See, e.g.*, Default Judgment and Permanent Injunction [ECF No. 29], at 4–6, *The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing Imp. & Exp. Ltd.*, No. 10-CIV-1630 (S.D.N.Y. Sept. 8, 2010) (ordered *en masse* transfer of domains as part of the permanent injunction, based on statutory authorization of injunction, Rule 65 and the court's inherent equitable powers) (Toaltoan Decl., Ex. D); Default Judgment and Permanent Injunction Order [ECF No. 27], *Warner Bros. Entm't, Inc. v. Doe*, No. 14-cv-3492 (S.D.N.Y. Oct. 3, 2014) (trademark and copyright action) (Toaltoan Decl., Ex. E).

Thus, on very similar facts, in a lawsuit brought by Plaintiffs against the manufacturer and distributors of another pirate set-top box, the court granted similar third-party injunctive relief. *See China Cent. Television v. Create New Tech. (HK) Ltd.*, No. CV 15-1869, 2016 WL 6871281, at *9 (C.D. Cal. Apr. 4, 2016) (granting permanent injunction to Plaintiffs); *Create New Tech.*, No. CV 15-1869 [ECF No. 192], at 9–10, ¶¶ 15–18 (ordering third-party injunctive relief) (Toaltoan Decl., Ex. B).

Defendants have made clear through their purposeful default and their continued infringement even after this suit was filed against them that they will not comply with any injunction. Thus, injunctive provisions directed to third-parties who are aiding and abetting Defendants by providing services used by Defendants to operate their pirate television network are necessary – upon proper notice to such parties – to halt Defendants' infringement and any future infringements by Defendants through use of the BTV device, the BTV Retransmission Service, or any similar device or service.

## G.     Plaintiffs Are Entitled to Post-Judgment Discovery

A court's authority to order post-judgment discovery is broad so long as it is relevant to or in aid of satisfying a judgment. *See* Fed. R. Civ. P. 69(a)(2); *EM Ltd. v. Republic of Argentina*,

695 F.3d 201, 207–08 (2d Cir. 2012) ("[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts."), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014).

Nonparties who have provided services to Defendants, including but not limited to domain privacy services, internet service providers hosting content and social media platforms, are likely to have information concerning the location of Defendants' assets which could aid in satisfying a judgement. As such, Plaintiffs are entitled to post-judgment discovery.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant default judgment against Defendants, and award Plaintiffs statutory damages in the amount of $**6,600,00**, post-judgment interest pursuant to 28 U.S.C. § 1961(a), a permanent injunction and post-judgment discovery. Plaintiffs submit a proposed judgment together with this motion, which is attached as Exhibit H to the accompanying Declaration of L. Danielle Toaltoan, dated September 25, 2018.

Dated: October 10, 2018

> Respectfully submitted,
>
> By:   */s/ Robert D. Balin*
>
> DAVIS WRIGHT TREMAINE LLP
> Robert D. Balin
> (RobBalin@dwt.com)
> Lacy H. Koonce, III
> (LanceKoonce@dwt.com)
> L. Danielle Toaltoan
> (danielletoaltoan@dwt.com)
> 1251 Avenue of the Americas
> New York, New York 10020
> Telephone: (212) 489-8230
> Facsimile: (212) 489-8340
>
> *Attorneys for Plaintiffs*